IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EDWARDS & RICHTER, L.L.P. d/b/a VIRGINIA'S ON THE BAY | § § § § § § § § | CIVIL ACTION NO. 2:19-cv-00118 |
| v. | | |
| GENE BROWN and DONNA BROWN | | ADMIRALITY RULE 9(h) |

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, EDWARDS & RICHTER L.L.P. d/b/a VIRGINIA'S ON THE BAY, Plaintiff, and files this Amended Complaint[1] against GENE BROWN and DONNA BROWN ("Defendants"), and in support thereof would respectfully show unto this Honorable Court as follows:

### I.
### PARTIES

**1.01** Plaintiff, EDWARDS & RICHTER L.L.P. is a limited liability partnership organized and, at the time the cause of action sued upon accrued on or about August 25, 2017, was authorized to do business in the State of Texas under the assumed name of Virginia's on the Bay.

---

[1] This Amended Complaint replaces the Plaintiff's Original Petition filed in the 28th Judicial District Court, Nueces County, Texas.

**1.02** Defendants, GENE BROWN and wife, DONNA BROWN ("BROWN") are individual residents of Port Aransas, Nueces County, Texas. They have been served with process and have made an appearance in this case.

## II.
## JURISDICTION & VENUE

**2.01** This case was originally filed on April 4, 2019, in the 28th Judicial District Court of Nueces County, Texas. The Defendants were served with process on April 8, 2019, who then removed this case to this Court by notice of removal filed April 24, 2019. Jurisdiction exists under 46 U.S.C. § 30101, 28 U.S.C. § 1441(b). Venue is proper under 28 U.S.C. § 1391(b)(1), (2), (3).

## III.
## STATEMENT OF FACTS

**3.01** Defendants are or were the owners of a 36' Morgan-By-Catalina sailing yacht built in 1973, whose Hull ID Number is MRY00031M73H. At all relevant times herein the sailing yacht was berthed at a slip located at the end of the 600 dock in the Port Aransas Municipal Marina ("City Marina"), which was a fixed dock.

**3.02** Tropical Depression Harvey ("Harvey") formed on Saturday, August 19, 2017 in the Caribbean Sea, and the National Oceanic and Atmospheric Administration ("NOAA") Hurricane Center began tracking the storm. The initial

forecast predicted the storm would cross the Yucatan Peninsula and enter the Gulf of Mexico by Wednesday, August 23, 2017.

**3.03** As predicted, Harvey reached the Gulf of Mexico on August 23, 2017. At 10:00 a.m. on Wednesday morning, NOAA's Hurricane Center issued a new tracking map reflecting the probable path of the storm center. NOAA predicted the storm would make landfall as a hurricane sometime Friday evening or early Saturday morning (August 25-26, 2017) in the middle Texas Gulf Coast just north of Corpus Christi Bay, and issued a hurricane watch from south of Baffin Bay up the Texas coast to near Matagorda Bay. The City of Port Aransas was almost centrally located in the predicted landfall tracking "cone." The hurricane watch area was upgraded to a Hurricane Warning in the early morning hours of August 24, 2017, with NOAA still predicting Hurricane Harvey would make landfall in that same tracking "cone" area on Friday evening or early Saturday.

**3.04** As Hurricane Harvey drew closer, the City of Port Aransas issued a mandatory evacuation order at 11:00 a.m. Thursday, August 24, 2017, and the mayor announced he was activating the City's emergency management plan. By 1:00 PM on Thursday, NOAA confirmed that Harvey had reached hurricane strength and was continuing on its predicted path. As Harvey made landfall at approximately 10:00 p.m. on Friday, August 25, 2017, the center of the storm was located at latitude 28.0° N and longitude 97.0° W. The City of Port Aransas is

located at latitude 27.8339° N, longitude 97.0611° W. In other words, NOAA had safely and accurately predicted the location and timing of Harvey's landfall since the storm reached the Gulf of Mexico.

**3.05** Though the Defendants had ample warning, they failed to take reasonable precautions to secure their sailing yacht under the weather conditions that were known to the owners or which could be reasonably anticipated. Defendants had sufficient warning and reasonable means to take proper action to guard against, prevent or mitigate the damages posed by extreme weather, but failed to do so. The damages that can be caused to others' property by a vessel that is not adequately secured, elsewhere berthed, or dry-docked during a hurricane are foreseeable to a reasonable prudent boat owner. Moreover, a reasonable prudent boat owner would know the distinctions between a fixed dock and a floating dock, and would know that most docks—including the docks that compose the City Marina at Port Aransas—are not designed to withstand Category 4 and Category 5 Hurricanes, especially when vessels are secured to the docks.

**3.06** The Brown's yacht was berthed on an inadequate fixed dock, with inadequate cleats and pilings available, on one side only, and thus insufficient and unable to contain the vessel during the storm surge and high winds which were predicted—well in advance of the arrival of Hurricane Harvey on August 25, 2017—and Harvey made direct landfall in the vicinity of Port Aransas. This was

foreseeable or should have been foreseeable to the Browns in the exercise of reasonable prudence.

**3.07** Immediately prior to the storm, the Defendants assert their sailing yacht was secured at the end of a fixed "finger" dock with extra lines on one side of the vessel and utilizing one (1) dock cleat tied to a forward line. The Defendants assert they tied their remaining lines to the pilings on the starboard side only. Defendants knew there were no nearby pilings available to the fixed dock which could be utilized to secure their yacht on both starboard and port sides, crossing from the bow to the stern. Defendants failed to secure the mast, remove all sails and take other actions which were reasonable and necessary to prepare for the anticipated winds. As a result, Defendants knew (or should have known) that with the adverse weather conditions that are known or reasonably anticipated to accompany tropical storms or hurricanes, the single cleat, pilings, ropes and lines attached on one side only at a fixed dock in the City Marina, would be insufficient and unable to contain the vessel during the storm surge and high winds which were being predicted by the National Hurricane Center. The Defendants were in privity or knowledge with respect to these matters, as they had a direct role in making decisions with respect to the securement, alternative docking, or dry-docking of their vessel.

**3.08** It is well-known to reasonable boatmen that marinas, especially those of fixed-dock design, are not safe locations for vessels during a hurricane or tropical storm, as their proximity to the water and coastal regions generally place these facilities either close to or directly in the path of these storms and their high winds and storm surges. However, experienced boat owners like the Defendants failed to make adequate hurricane preparations to guard against, prevent or mitigate the foreseeable damages posed to their sailing yacht and others by the weather.

**3.09** Defendants did not have an individual Hurricane Plan in place specifically designed for their sailing vessel once a hurricane watch was posted. When a hurricane watch was posted, Defendants did not strip off sails and canvas, lower the mast, drop one or more anchors, and at a minimum, find a floating dock which could accommodate extra lines and chafe protection along multiple cleats with parallel pilings along both sides of the vessel, to prepare for the weather event. Defendant made no attempt to evacuate and relocate their sailing vessel to an alternative docking site with proper anchorage away from the City Marina prior to the arrival of the storm. Such precautions would have protected the property of others in the harbor from damages this 36' sailing yacht would (and did) cause during the storm. Alternatively, the Defendants did not seek to secure their vessel outside of the water in a dry-dock or other protected area inland.

**3.10** Defendants were negligent and displayed a lack of good seamanship by failing to adequately inspect or secure the vessel, or remove it to a safe location, in light of predicted, anticipated, and reasonably foreseeable weather conditions. As a consequence of their poor decisions, during the storm the Defendants' sailing vessel came loose from the 600 dock at the City Marina during the storm and after floating across the harbor, crashed into and through pilings, framing, decking, electrical and plumbing on the 105' linear foot dock known as the B-Pier at Virginia's On The Bay Marina located at 815 Trout Street in Port Aransas, thus physically damaging the docks and marina and various components of them, which was then owned by Plaintiff.

## IV.
## CAUSES OF ACTION

**4.01** It was the responsibility of Defendants to know the proper precautions that a reasonable prudent vessel owner would take under the circumstances that were before the Browns, and to take those proper precautions to secure adequately (if even possible under the anticipated conditions and the design of the fixed dock), move the vessel and dock elsewhere outside of the anticipated landfall, or dry-dock the vessel in the face of known weather conditions which were foreseeable and could be reasonably anticipated. Defendants were negligent or grossly negligent for failing to take the reasonable and necessary precautions prudent boat

owners would have taken under the same or similar circumstances, or for taking actions that no reasonably prudent boat owner would have taken under the same or similar circumstances. Defendants were negligent or grossly negligent for failing to have an individual Hurricane Plan in place and failing to remove and relocate their 36' sailing vessel to a safe location away from the City Marina in advance of a named storm in the Gulf of Mexico, especially when the predicted track was to make landfall in the immediate vicinity of Port Aransas. Defendants were negligent or grossly negligent in failing to inspect their vessel and assess the ability of the slip location to give adequate protection, in light of the absence of pilings which could secure both sides of the vessel once a hurricane watch was announced. Defendants were further negligent or grossly negligent in failing to strip off sails and canvas, lower the mast, drop one or more anchors, and/or find a floating dock with the ability to hold extra lines and chafe protection with cleats and pilings on both sides of the vessel, in order to prepare for the weather event. Defendants were further negligent in failing to determine the adequacy of the City Marina facilities in light of the anticipated circumstances, by failing to determine the adequacy of securing to a dry-dock in light of the anticipated winds and storm surge. The negligence and/or gross negligence of the Defendants was a proximate cause of damage to Plaintiff.

# V.
## DAMAGES

**5.01** Costs for rebuilding the B-Pier with 105' linear feet of pilings, framing, decking, electrical and plumbing, together with lost revenue associated with the damages incurred, are estimated to be less than $100,000.00 at the time of filing, although Plaintiff reserves the right to modify this estimate as further information is obtained during the course of this proceeding.

# VI.
## CONDITIONS PRECEDENT

**6.01** All conditions precedent have occurred or have been met.

# VII.
## PRE- AND POST-JUDGMENT INTEREST

**7.01** Plaintiff requests pre-judgment interest at the earliest time allowed by law at the highest rate allowed by law. Plaintiff further requests post-judgment interest at the earliest time allowed by law at the highest rate allowed by law. Plaintiff requests all costs of court.

# VIII.
## JURY DEMAND

**8.01** Plaintiff demands trial by jury and herewith tenders its jury fee.

## IX.
## MATTERS IN AVOIDANCE

**9.01**   The Defendants have interposed various affirmative defenses, to which the Plaintiff would allege the following.

**9.02**   With respect to the first affirmative defense, Hurricane Harvey and its high winds and storm surge were not an act of God, force majeure, or "other metaphysical event," because it was not impossible to predict and anticipate.

**9.03**   With respect to the thirteenth affirmative defense of exoneration and limitation of liability pursuant to 46 U.S.C. § 30505, the Plaintiff would assert as matters in avoidance that the Defendants elected remedies by filing an unsuccessful petition for limitation of liability pursuant to 46 U.S.C. app. § 185. Plaintiff also asserts collateral estoppel or res judicata. Plaintiff also states that such limitation of liability does not exist because of the Defendants' privity and knowledge.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that on final trial Plaintiff recover judgment against the Defendants jointly and severally for all actual (both property damage and lost revenues and profits) and exemplary damages; pre-judgment interest and post-judgment interest from the earliest time allowed by law at the highest rate allowed by law; costs of suit; reasonable and

necessary attorney's fees; and such other relief, at law or in equity, to which it may be justly entitled to receive.

        Respectfully submitted,

**HARRIS & GREENWELL**
One Shoreline Plaza
800 N. Shoreline Blvd., Ste. 2800-S
Corpus Christi, Texas 78401
Telephone:   (361) 883-1946
Facsimile:   (361) 882-2900
Email:   agreenwell@harris-greenwell.com

By: _____
    Andrew M. Greenwell
    State Bar No. 00784170
    Fed. ID. No. 15456

**ATTORNEYS FOR PLAINTIFF
EDWARDS & RICHTER, L.L.P. d/b/a
VIRGINIA'S ON THE BAY**

## CERTIFICATE OF SERVICE

    I certify by my signature appearing above, that a true and correct copy of the above and foregoing motion has been served on counsel for Petitioner as shown below via electronic mail and/or facsimile service in accordance with the Federal Rules of Civil Procedure, on July _5_, 2019:

Tracy Freeman
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
909 Fannin, Suite 3300
Houston, Texas 77010
**ATTORNEY FOR DEFENDANTS
GENE BROWN AND DONNA BROWN**